Case number 23-1594. Heidi Stirrup personally and in her capacity as a member of the United States Air Force Academy Board of Visitors, et al., balance versus United States Department of Defense, et al. Mr. Epstein for the balance, Mr. Jed for the appellees. May it please the court, my name is Richard. Good morning, Mr. Epstein. Good morning to you all. May it please the court, my name is Richard Epstein and I'm counsel for Heidi Stirrup and the other plaintiffs in this particular case. This case involves a very complicated history about the treatment of the various advisory boards to the three service academies. These boards were established in the 1950s in order to give independent advice to the prospective academies in question. They have a complicated appointment structure. The five of these appointments are made by the Senate, four are made by the House of Representatives, and six are made by the President. Those which are made by the Senate and the House are each made for one year. Those made by the President are made for three-year terms, and these terms all rotate two years. For the first 60-odd years in which these things were done, every member of every one of these boards was allowed to serve their terms, even after a change of administration from one party to another. That situation changed, and it changed radically when Joseph Biden became President in 2021. On February 4th of that particular year, the Secretary of Defense, Lloyd Austin, issued a proclamation which announced that operation of these particular boards was suspended, pending a zero-based review of its overall operations. There was no explanation as to where he got the authority to do these sorts of things, and it had never been done anywhere else. In addition, what happened was there was an announcement never acted upon, which said that the Secretary of Defense had the power to appoint subcommittees. These were not members of the basic Board of Visitors, these were people who were outside of that, to be appointed solely at his will. The actual constitution of these particular bodies allows the 10 members of these things to appoint their own particular chairman and to organize their own internal affairs. So this went then into on September 8th. What happens is the next announcement came down, and there was a very abrupt letter from the assistance of the President, which says, we request your resignation now by 5 o'clock, and if we don't get it then by 6 o'clock, we are going to fire you all. And he carried through on that particular threat. So the questions that are raised about this case, or whether or not the radical departure from the previous practice associated with these operations is something which is cognizable in court, and something on which it is possible for the court to give a remedy. So to start with the beginning, the first issue that is always raised in these courts has to do with the standing of the parties in question. The district court treated the issues in the reverse order in which they should have been done. It started with dealing with the various questions about suspension and the subcommittee, and then only came after those things were said. They had no standing. So the central issue in the case is to whether somebody who's advised from an advisory board can in fact be bounced from that position. The standard requirements on standing having to do with legal rights, having to causation, and having to do with remedy were easily satisfied with respect to that, at least so long as the term of offices were continuing. But the last requirement becomes much more complicated if it turns out that the judicial proceedings go further than the allotted time, which happened in that particular case. If you do this thing in a correct order, once it's conceded that these people have the power to sit, then at least other two questions have to resolve themselves. What does it mean to restore somebody to a seat on an advisory board if you can then immediately suspend them so it can't do any operation for its entire term? What does it mean to put somebody back on a position in which it turns out that subcommittees outside of this particular body could take all of its work? This body was meant to be exclusive with respect to each of the service academies, and the particular actions in question rendered the whole situation a total novice. So the only way in which this particular case can be argued in any kind of coherent fashion is to assist that once you decide that you have standing to get the seat back, then you have the right for all these incidents. There is a long discussion of this issue in the case of Swan v. Clinton, in which it made very clear that if there's any form of relief that can be given in one of these cases, you as the court are obliged to do it, because otherwise an action which is illegal will have no response to the way in which this thing goes. So terms have expired. Yes. What relief can we give at this point? You can't give it to the individual plaintiffs, but I think it's very important to understand that this is a structural case having to do with the organization of a very powerful institution inside a democratic society. These committees, and they're not only in the military but everywhere else, will be completely gutted if every president has the power to neutralize the operation of the board when some of its appointees are by the Senate and by the House. And then it's just over. So the case which is most relevant on this point is Roe v. Wade. And here you have a nine-month pregnancy, a very much of a term interest. And if, in fact, the Segal process goes through, by the time the case is over, the issue is moot because the woman either had the abortion or, in fact, has given birth to the child. Well, you can't get to the structural issue. And in this case, we have term limits as well. Does that mean the capable of repetition? And evading review. To mootness? Yes, it's exactly. If the mootness is... What? It has to be capable of repetition. Well, it is capable. As to the same parties. Well, I think it's... Is it implied in reappointing these folks? Well, what happens is, no. But if you go back to Roe v. Wade, it was not with respect to the same party. It was respect to all other pregnant women who got pregnant at some future time. And so what you're trying to do is to make sure that in this particular situation, if there's a constitutional right that has to be vindicated, in this case, there are powerful structural concerns, there's somebody who's in a position to do this. Well, then the question you ask is whether or not this kind of thing is capable of review. We have a deeply politicized government at this time. And if it turns out that a Democratic president can do this to Republican nominees, a Republican president can do it to Democratic nominees. We want to see none of this happen. So you're seeking a nationwide permanent injunction? A nationwide permanent injunction to throwing people off of boards before their terms have expired, given the fact that, given the substance, which I'm going to address later, that the whole case is not meritorious on the part of the government. The president exceeded his authority. The secretary of dissent exceeded their authority. And so if we can give no structural review, then this is going to happen again and again. You mentioned at the outset three actions, the zero-based review, the power to establish subcommittees, and the request for resignation to firing. I take it your request for injunctive relief is limited to the last because, as you mentioned, the power to establish subcommittees was never acted upon? No, we want to have... Look, how is that ripe if it was never acted upon? Well, because what happens is they threaten to do it, they'll threaten to do it again. We don't even know if it's subcommittees of the members or... No, no, we do know what the... We don't know whether they're going to actually use that authority. It's a latent authority. Well... How is that possibly ripe? You know better than that. Well, I do not know better than that. Because what happens is under these circumstances, if in fact there is one president who could make this kind of a threat, then another president can make this kind of a threat. And they never appointed them in this particular case, but I think there's a very serious risk. So once you want to establish... But still in the activities of the members? Yes. It's a threat. Well, because yes. Because what happens is in this case, if you sit there and allow the president is going to act upon them and the entire structure of these committees will be stopped. There is here very little danger of worrying about the rightness question, because each and every fact that you have to know in order to make a substantive determination as to whether or not this is allowed is fully available on the record now. There is under the statute, no authority whatsoever to create subcommittees. So it should be totally illegitimate for anybody to threaten to create them in order... We know very little about the nature of the subcommittees. It's almost as if you're arguing that the only people from whom the commander-in-chief could get advice or the principals of the military services could get advice are these... The only people who... ...who are open to them to get advice from any number of sources. No, there is never an instance in which a subcommittee could have members which are not a member of the principal body. Every definition says that. Every piece of past has been consistent with this. And so the question is now that you see behavior which has never been undertaken before, does one want to say, okay, we're not going to do anything about it because they've run out the clock. We can't put them back in office. We can't worry about the subcommittee situation. We can't worry about any of the issues on the limitation of suspension. Well, what does it mean to restore people to office if what happens is in the future, their restoration to office will then be subject to this kind of polarized behavior? This will become the way, unfortunately, too many judicial nominations have become, constantly stalled out with political differences. The remedy that we want to impose in this case is stunningly simple. Simply follow the statute. There is no detailed supervisory activity that you have to engage in. There's no positive account of what's going on. This is not like trying to give specific performance of an employment agreement where the parties involved in the particular case have very complicated ongoing relationship. This is a simple, straightforward injustice designed to protect against what is a systematic abuse. So, Mr. Epstein, you analogize the boards to the war claims commissions in Wiener versus United States, but then we have the decision in Severino, which distinguishes Wiener as involving kind of a quasi-judicial body in contrast to bodies that fulfill purely executive functions because they provide advice to the president. So, why isn't maybe you're just preserving the claim for hierarchy? No, no, no. The Severino case is very much in our favor. What happens is if you look at Severino, there is no statutory authorization, which says that the committees in question have to be independent and fairly balanced with respect to their political views. As you said in Severino, that particular case only involved actions that of the executive branch, whereas in this particular case, by definition, it turns out that two houses of the Congress and the president both contribute members to these particular situation. These people are not advisory to the president. If you look at the results, they have to be published. They have to be published to the public at large. These are not individuals who are key private advisors to the president where he has complete discretion. And so then what you say is, oh, well, Wiener was a case involving quasi-judicial activity, but you have to look at the larger structural framework in which that particular decision was made. And what that framework says is we have to figure out whether or not we're dealing with people here for whom an at-will status makes sense or whether we are dealing with people here whose independent obligations under statute require that they be insulated from the president. Well, these guys are supposed to be insulated from the president, and they have been uniformly insulated from the president for 65 years before these unprecedented actions. So if you just try the general formula, what becomes perfectly clear is that they are on the for-cause dismissal side of the line rather than on the at-will side of the line. In addition, there was no much mention whatsoever in Severino about the real separation of powers having to do with the Buckley v. Vallejo, and there was not a single word that the government wrote in order to expand what we were saying in that case. But if, in fact, you have people who are appointed by legislative bodies, they cannot be executive officers under the Constitution given the strictures associated with Buckley v. Vallejo. Well, the only way you can save this body, therefore, is to recognize that they have only advisory functions, that they are not officers of the United States, so that cases like Carlucci, which are constantly sided by the government, are dealing with a situation which is totally inapplicable here. All right. We'll give you a little bit of rebuttal time, but we've taken you over the time allotted. Oh, thank you. Jed? Good morning, Your Honors. Adam Jed for the United States. May it please the Court. It seems like a number of the questions this morning, to my friend, were focused on the answers to essentially acknowledge that no judgment could be issued at this point that would benefit any of the plaintiffs, and that what he is largely seeking is some sort of an advisory opinion based on the theory that maybe if some things were to happen in the future in a particular way, it might benefit someone else. That is obviously not the sort of case or controversy that is properly resolvable. I think his view is that there are capable court treated the repetition as potentially applicable to other persons in the class of the plaintiffs before the court. That is his view. I think that is a historically accurate description of some of the cases that have applied to that doctrine. I think the Supreme Court and this court have subsequently made clear that it needs to be with respect to the same plaintiff. I'm sorry. Unless the court has any other questions. Thank you, Your Honor. Well, I don't think there's much that's been said that I have to rebut, but let me then just stress the last point I made. The Buckley-Villejo issue is no part of Severino, and it is in fact a situation which says that these voids are essentially all unconstitutional. If in fact they involve appointive individuals, given the fact that legislatures, both houses are able to make these kinds of situations. So it is that they have to be regarded as sui generis. And then the analogy is, are they like the Parsons type people, or are they like the Wiener type people, or the Humphreys executive people? And the Humphreys executives, it was not just the Judicant body, right? It's also the FTC as an investigative body, and it does other sorts of things. So if you're starting to look at the way in which these cases work, it seems very clear that this unprecedented action has no merit associated with it. What the district court did on the merits, it says, first we're going to look to the statute. And then what it did is it implied a term of dismissal, which is appropriate for offices, but which is utterly inappropriate in this particular case. And then since they said the statute was, quote, clear, they were... The fact that it might be appropriate for officers, I'm not sure it makes it inappropriate. But these are not officers. Other sui generis types of appointees. Well, but there is absolutely no evidence. In these cases, you look to practice and history. And if you have a uniform practice, and there was one incident, mainly when President Reagan decided that he wanted to remove somebody from the Civil Rights Commission, there was a furious uproar about that activity, and he immediately backed down. And so if you have a statute... But there's no determination as to power one way or the other, given that history. What? There's no determination regarding power one way or the other. Yes, there is. The history has made it very clear that these people serve their full term. That people have tolerated their service. How in the world could it ever be the case that everybody and every party has respected all of these rules, and then when it comes to the question of contractual interpretation, what you do is you take a literal statute, which is completely consistent with the statutory memory, and then say you have the at-will hold out of this thing when there's no statutory authorization that the President has, either under the Constitution. There's no inherent power with respect to their boards, and there's no statutory authority with respect to this situation. Indeed, it's exactly the opposite, because the Secretary of Defense is obliged to prop up the structure, not to destroy it. And that's what's happened to you. All right. Thank you. Thank you, Barbara. Case is submitted.
judges: Pillard, Katsas, Garcia